# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

<u>NICHOLAS PELLEGRINO</u>

     v.                                      Civil No. 25-cv-11681-LBM

<u>JUDGE MYONG JOUN, ET AL.</u>[1]

## <u>REPORT AND RECOMMENDATION</u>

Pro Se Plaintiff Nicholas Pellegrino filed an initial Complaint (<u>Doc. No. 1</u>) and additional documents the court construes as Complaint Addenda (Doc. Nos. 6 at 1, 6-5 at 6, 7, 16, 21, 24 at 1, 31, 33 at 5, 39, 40, 41, 42, 43, 47, 48, 53 at 5, 55, 58 at 1, 61 at 3, 62, 65 at 1, 69 at 1, 70 at 3, 72 at 13, 73, 74 at 1, 75, 76, 77, 79 at 1, 79 at 4, 83, 97).[2]  The court construes those documents, together, to be the Complaint in this matter for all purposes.  In his Complaint, Mr. Pellegrino asserts that the defendants violated his federal constitutional and statutory rights and are liable to him under Massachusetts state law.  The Complaint is before the undersigned magistrate judge for preliminary review pursuant to 28 U.S.C. § 1915(e)(2).  Additionally, motions and requests docketed in this case as Document Nos. 6-5 at 10, 6-5 at 16, 8, 17, 32 at 3, 40, 41, 53 at 1, 55, 56

---

[1] Plaintiff identified the following defendants in the Complaint documents filed in this action: United States District Judge Myong Joun; Massachusetts Housing Court Judge Timothy D. Sullivan; Boston Mayor Michelle Wu; ten unnamed "Clerks of Federal and State Court" ("John/Jane Does" #1-10); NBC Boston; WCVB Channel 5 Boston; Fox Corporation; Fox News Media; Joy Taylor; CNN; Meta Platforms, Inc.; Facebook; Instagram; Threads; WhatsApp; Mark Zuckerberg; Alphabet Inc.; Google; YouTube; Amazon; Amazon.com, Inc.; Apple, Inc.; Netflix, Inc.; The Walt Disney Company; Microsoft Corporation; Comcast Corporation; Paramount Global (formerly ViacomCBS); News Corporation; Warner Bros. Discovery, Inc.; Sony Group Corporation; Spotify Technology S.A.; Twitter, Inc. (now X Corp.); and 100 "John Doe" subsidiaries, agents, and contractors of the named defendants.

[2] See "Order Clarifying Docket Numbers," issued simultaneously with this Report and Recommendation.

at 1, 56 at 4, 58 at 1, 58 at 4, 58 at 5, 59 at 1, 61 at 1, 61 at 3, 62, 63 at 1, 65 at 1, 65 at 3, 69 at 1, 70 at 3, 75, 76, 77, 79 at 1, 82, 85 at 4, 88, 96, and 97, are here for consideration and a recommendation as to disposition.  For the reasons set forth herein, the undersigned magistrate judge recommends that the district judge dismiss this case in its entirety and deny the above-listed motions.

## BACKGROUND

Mr. Pellegrino's Complaint does not contain a clear narrative underlying his claims.  The court, however, carefully reviewed all of Mr. Pellegrino's filings, and certain documents filed in the public docket of other cases involving Mr. Pellegrino, and construes them to assert the facts set forth below.

### *Housing Case*

In March 2025, Patra Aliardo initiated an eviction proceeding against Mr. Pellegrino and another individual.  See Aliardo v. Pellegrino, No. 25H77SP001409 (Mass. Trial Ct., N.E. Hous. Ct., N.E. Div. ("Housing Court"), filed Mar. 17, 2025) ("Housing Case") (File Ref. No. 1).  Judge Timothy D. Sullivan presided over the housing case, and, on May 9, 2025, entered judgment in favor of the plaintiff.  See May 9, 2025 Findings of Fact, Rulings of Law & Order for Judgment, id. (File Ref. No. 27).  Thereafter, Mr. Pellegrino filed a number of post-judgment motions and a Notice of Appeal in the Housing Court.  On May 19, 2025, the Housing Court plaintiff moved to dismiss Mr. Pellegrino's appeal.  See id. (File Ref. No. 36).  Judge Sullivan granted that motion on June 20, 2025.  See id. (File Ref. No. 63).  On June 25, 2025, because no appeal remained pending in that matter, Judge Sullivan allowed execution of the May 9, 2025 Judgment.

### *BDC Case*

On April 8, 2025, Mr. Pellegrino filed a lawsuit in this court asserting numerous claims against multiple defendants. See Apr. 8, 2025 Compl., Pellegrino v. Becton, Dickenson & Co., Civ. Case No. 25-cv-10861 (D. Mass.) ("BDC Case") (ECF No. 1). United States District Judge Myong Joun presided over that matter. Judge Sullivan was named as a defendant in the BDC Case. See id.

On June 2, 2025, Judge Joun issued an Order in the BDC Case directing Mr. Pellegrino to: (1) pay the filing fee or file a new motion for in forma pauperis status, and (2) file an amended complaint, by June 27, 2025. See BDC Case (ECF No. 61). In the June 2 Order, Judge Joun also denied twenty-five motions Mr. Pellegrino filed in the BDC Case. Mr. Pellegrino then filed more than fifty documents in the BDC case between June 3, 2025 and July 3, 2025. On July 7, 2025, Judge Joun issued an Order dismissing the BDC Case, without prejudice, for failure to comply with the June 2, 2025 Order. See id. (ECF No. 114).

### *Facts Asserted in This Case*[3]

In his Complaint documents, Mr. Pellegrino states that Judge Sullivan, Judge Joun, and unnamed Clerk's office staff members deliberately mishandled his legal paperwork in the Housing Case and the BDC Case, causing delay or improper rejection of Mr. Pellegrino's legal paperwork. Mr. Pellegrino does not specify what paperwork was mishandled, delayed, or rejected. He further

---

[3] In his Complaint, Mr. Pellegrino, who describes this case as "a continuation and extension of" the Housing Case and the BDC Case, asks to incorporate, by reference, the "more than 120 pleadings and motions" he filed in the Housing Case and the BDC Case. Doc. No. 1, p. 8. For reasons explained in this Report and Recommendation, the court recommends that the district judge decline to incorporate those documents by reference.

3

asserts that Judge Sullivan and Judge Joun issued conflicting rulings in those cases. Mr. Pellegrino has not identified those rulings or explained the alleged conflict.

Mr. Pellegrino asserts that on January 15, 2025, an unidentified person publicly called him a pedophile, which Mr. Pellegrino asserts was a false statement. Mr. Pellegrino states that the media outlets, digital platforms, and their affiliates that Mr. Pellegrino names as defendants here (collectively, the "media defendants")[4] published that false statement and caused that information to be "carried out across media outlets and digital platforms." Doc. No. 41 at pg. 2.

Mr. Pellegrino alleges that a few hours after he filed this case on June 10, 2025, Boston Mayor Michelle Wu held a press conference, and posted a video on Instagram, commenting on legal proceedings concerning Mr. Pellegrino, and, in concert with media defendants, publicly disclosed private facts and confidential information about Mr. Pellegrino and those legal proceedings, in violation of a gag/media silence order issued in an unspecified legal proceeding. Additionally, Mr. Pellegrino claims that during her June 10, 2025 press conference, Mayor Wu made "false racial assumptions" and used "coded language mischaracterizing Plaintiff Pellegrino, resulting in defamation and ethnic misrepresentation," by incorrectly identifying him as Spanish. Doc. No. 6 at 1, pg. 3.

Mr. Pellegrino claims that Judge Joun, Judge Sullivan, and Mayor Wu, and the media defendants, "knowingly and willfully participated in a coordinated effort to undermine Plaintiff['s] rights by unlawfully disclosing private information, making false statements, and violating judicial orders," specifically, a gag order. Id. at pg. 1-2. As a result of that effort, Mr. Pellegrino contends that the defendants harmed him reputationally, in his career, and in his business interests. Mr. Pellegrino does not further describe the specific harm he suffered.

---

[4] See supra n.1 (listing defendants).

Mr. Pellegrino claims that the media defendants suppressed and censored his speech on their online platforms through "shadow bann[ing]," "algorithmic[] silenc[ing]," and "block[ing]." Doc. No. 41, pg. 2. Mr. Pellegrino suggests that the alleged censorship may have been motivated by political-viewpoint discrimination.

### *Claims Asserted in This Case*

The Court construes Mr. Pellegrino's Complaint to assert the following claims:

1. The defendants are liable to Mr. Pellegrino for violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO"), and engaged in a civil RICO conspiracy, in that the defendants, together, constitute an enterprise which engaged in a pattern of racketeering and affecting interstate commerce, in the Housing Case and the BDC Case, by:

    a. defaming him;

    b. engaging in a pattern of conspiracy, corruption, misconduct, fraud, and obstruction of justice;

    c. violating his right to privacy; and

    d. depriving him of his rights under the First, Fourth, Fourteenth, and Fifteenth Amendments to the United States Constitution.

2. The defendants, in conspiracy with one another, engaged in the conduct underlying Claims 1(a)-(d), which violated Mr. Pellegrino's federal constitutional rights under 42 U.S.C. §§ 1985 and 1986.

3. The media defendants, by censoring his speech on their media and digital platforms, and retaliating against him for his speech, violated Mr. Pellegrino's First Amendment right to free speech

4. The defendants are liable to Mr. Pellegrino for defamation of character in that they intentionally and maliciously published false statements about Mr. Pellegrino which harmed his reputation, career, and business interests.

## DISCUSSION

## I.   **Preliminary Review**

### A.   Preliminary Review Standard

In conducting preliminary review under 28 U.S.C. § 1915(e)(2), the court takes as true the non-conclusory facts alleged in the complaint documents, and inferences reasonably drawn from those facts, excises any legal conclusions, and considers whether, so examined, the complaint states a claim that is plausible on its face.  See Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell. Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The court liberally construes the filings of pro se litigants. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

The court may dismiss claims if it lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief might be granted, or the action is frivolous or malicious.  See 28 U.S.C. § 1915(e)(2).  Dismissals under § 1915(e)(2) may be made sua sponte, prior to the issuance of summons and service of the complaint, "so as to spare prospective defendants the inconvenience and expense of answering" a complaint which "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 324, 325 (1989).

### B.   Mr. Pellegrino's Litigation on Behalf of Others

In his Complaint and certain other filings, Mr. Pellegrino asserts claims and seeks immunity from suit and/or other relief, on behalf of the following individuals and organizations, several of whom he identified as co-plaintiffs in this matter:

6

- Becton, Dickinson and Company (Doc. Nos. 1, 70 at 3, 84);
- Clerk's office staff in the Housing Court and this court (Doc. Nos. 1, 67, 70 at 3);
- The Boston Celtics (Doc. Nos. 1, 59 at 1);
- Members of the Kardashian/Jenner family (Doc. Nos. 1, 18, 37 at 3, 43, 60 at 1, 60 at 4, 60 at 7, 70 at 3, 76);
- President Donald J. Trump, members of his family, his administration, and his executive and legal teams (past and present) (Doc. Nos. 5, 33 at 5, 39, 40, 41, 47, 48, 53 at 5, 63 at 1, 75, 79 at 1);
- Karen Read (Doc. Nos. 6 at 1, 7, 61 at 3, 79 at 1);
- Justin Bieber (Doc. No. 6-5 at 31);
- NBA Athlete Jayson Taytum (Doc. No. 7);
- Sean "P. Diddy" Combs (Doc. Nos. 53 at 5, 56 at 20, 65 at 3, 75, 79 at 1, 97);
- Attorney Michelle Quinn (Doc. Nos. 70 at 3, 84);
- The National Basketball Association (NBA) (Doc. No. 59 at 1);
- Everyone on the "Epstein List" (Doc. No. 75);
- Terry Rozier (Doc. No. 97);
- Tarone Antell Williams (Doc. No. 97); and
- U.S. District Court for the District of Massachusetts clerks and staff (Doc. No. 67).

As a pro se non-attorney plaintiff, Mr. Pellegrino may not litigate claims on behalf of anyone but himself. See 28 U.S.C. § 1654; L.R. 83.5.5(b) ("An individual appearing pro se may not represent any other party and may not authorize any other individual who is not a member of the bar of this district to appear on his or her behalf."). Additionally, the rights of any purported plaintiff, other than Mr. Pellegrino, are not properly litigated in this action unless such plaintiff appears personally, or an attorney appears on their behalf, neither of which occurred here.

For these reasons, the district judge should dismiss all the claims Mr. Pellegrino asserts on behalf of anyone other than himself. The district judge should also deny Mr. Pellegrino's motions, and requests filed in documents not identified as "motions" (Doc. Nos. 1, 5, 6 at 1, 6-5 at 31, 7, 18, 33 at 5, 37 at 3, 39, 40, 41, 43, 47, 48, 53 at 5, 56 at 20, 59 at 1, 60 at 1, 60 at 4, 60 at 7, 61 at 3, 63 at 1, 65 at 3, 67, 70 at 3, 75, 76, 79 at 1, 84, 97), to the extent they seek immunity or other relief in this matter for the individuals and organizations listed above .

C.    Defendant Judges' and Clerks' Immunity from Suit

1.    *Judicial Immunity*

Mr. Pellegrino names two judges as defendants in this action.  "[I]t is an axiom of black letter law that when a judge carries out traditional adjudicatory functions, he or she has absolute immunity for those actions." Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019); see also Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (judicial immunity is overcome only for "actions not taken in the judge's judicial capacity" and "for actions, though judicial in nature, taken in the complete absence of all jurisdiction") (per curiam).  "[A]bsolute judicial immunity means not just immunity from damages, but immunity from suit altogether." Zenon, 924 F.3d at 617 n.10 (citation omitted).  Judges are protected from suit by absolute judicial immunity "even when their actions are malicious, corrupt, mistaken, or taken in bad faith." Id. at 616; see also King v. Fields, Civ. Action No. 25-30123-MRG, 2025 WL 1884301, at *2 (D. Mass. July 8, 2025).

To determine whether a judge is entitled to the protection of the judicial immunity doctrine, the Court determines "whether the judge's act was one normally performed by a judge, and whether the parties were dealing with the judge in his or her judicial capacity." Zenon, 924 F.3d at 617 (citing Stump v. Sparkman, 435 U.S. 349, 362 (1978)).  The claims Mr. Pellegrino asserts here against Judge Joun and Judge Sullivan arise from conduct they are alleged to have engaged in while performing judicial functions, such as conducting hearings and issuing rulings and orders in cases before them.  Accordingly, Judge Joun and Judge Sullivan are protected from suit by absolute judicial immunity, and the district judge should dismiss all of the claims asserted against them in this action.

2.  *Court Clerk Immunity*

Mr. Pellegrino claims that unidentified members of the Clerk's office in the Housing Court and this court violated his rights by mishandling and delaying his paperwork with a motive to interfere with his rights and his lawsuits. Similar to judicial immunity, "[t]he doctrine of quasi-judicial immunity provides absolute immunity for those who perform tasks that are inextricably intertwined with the judicial function." Nystedt v. Nigro, 700 F.3d 25, 30 (1st Cir. 2012). "'Court clerks perform tasks that are inextricably intertwined with the adjudication of disputes.'" Hartunian v. Sweeney, Civ. No. 3:21-cv-30089-KAR, 2022 WL 3715870, at *8 (quoting Mangianfico v. Stanton, No. C.A. No. 19-10490-ADB, 2019 WL 1284819, at *3 (D. Mass. Mar. 20, 2019)). "Thus, the First Circuit has extended absolute immunity to court clerks." Hartunian, 2022 WL 3715870, at *8 (citing Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980)).

Mr. Pellegrino sues the court clerks for actions they took while receiving, handling, and docketing his legal paperwork. The court finds that such activities are inextricably intertwined with the judicial function. Accordingly, the court finds that the defendant court clerks are immune from suit, and the district judge, therefore, should dismiss all the claims asserted against those defendants.

D.  RICO and RICO Conspiracy

Mr. Pellegrino alleges that the defendants are liable to him for a civil RICO violation. "The civil-suit provision of the RICO statute grants the right to sue to '[a]ny person injured in his business or property by reason of a violation of' the substantive provisions of the statute." Cleveland Bakers & Teamsters Health & Welfare Fund v. AMAG Pharms., Inc., Civ. Action No. 23-12575-FDS, 2025 WL 1024103, at *6 (D.Mass. Mar. 12, 2025) (quoting 18 U.S.C. § 1964(c)). "To state a civil RICO claim, a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through

9

a pattern, (4) of racketeering activity.'"  Humana Inc. v. Biogen, Inc., 126 F.4th 94, 103 (1st Cir. 2025) (quoting Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003)).  "By statute, the 'pattern' element requires a plaintiff to show at least two predicate acts of 'racketeering activity, which is defined to include violations of specified federal laws . . .."  Id.

> Civil RICO claims must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.  [I]n cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants.  . . . Accordingly, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.

Cleveland Bakers, 2025 WL 1024103, at *6 (internal quotation marks and citations omitted).

Mr. Pellegrino generally, and in conclusory fashion, alleges that the defendants, separately and/or together, are enterprises engaged in a coordinated effort to violate his rights and otherwise harm him by engaging in a pattern of racketeering activity.  Mr. Pellegrino lists a number of predicate acts which are set forth in 18 U.S.C. § 1961, which he claims the defendants engaged in, without any specific facts or description of which defendant(s) engaged in what conduct constituting those acts.  Further, other than naming defendants, Mr. Pellegrino failed to assert any facts which show that the defendants coordinated with one another, conspired together, or that they engaged individually, in a pattern of racketeering activity in violation of RICO.

In general, "[o]ur federal pleading standard 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' Accordingly, we 'will not accept a complainant's unsupported conclusions or interpretations of law.'"  Rae v. Woburn Pub. Schs., 113 F.4th 86, 98 (1st Cir. 2024) (quoting Twombly, 550 U.S. at 555; Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993)), cert. denied, 145 S. Ct. 1431 (2025).

And, where a "complaint fails to plead a substantive RICO claim, its claim for conspiracy to commit a RICO offense must also be dismissed." Cleveland Bakers, 2025 WL 1024103, at *9.

Mr. Pellegrino failed to assert specific facts to support the elements of a RICO claim. In short, Mr. Pellegrino's complaint amounts to "labels and conclusions, and a formulaic recitation of the elements" of a RICO claim. Twombly, 550 U.S. at 555; see also Rae, 113 F.4th at 98. The district judge, therefore, should dismiss the RICO and RICO conspiracy claims asserted in the Complaint.

E.    42 U.S.C. §§ 1985, 1986 Claims

Mr. Pellegrino asserts that the defendants, federal and state actors as well as private companies, conspired to violate his federal constitutional rights. Such claims arise, if at all, under 42 U.S.C. §§ 1985 and 1986. A civil rights conspiracy exists where:

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008). Although "pro se complaints are to be read generously, allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements." Slotnick, 632 F.2d at 165.

Mr. Pellegrino's assertions that the defendants conspired to violate his constitutional rights are nonspecific, vague, conclusory, and unsupported by any specific facts. Accordingly, the district judge should dismiss those claims.

F.    First Amendment Claims

Mr. Pellegrino asserts that the media defendants violated his First Amendment right to free speech by engaging in shadow banning, censorship, and otherwise interfering with his ability to

11

use media outlets to make statements.  He further asserts that the media defendants, in doing so, have engaged in state action.

> The Free Speech Clause of the First Amendment constrains governmental actors and protects private actors. To draw the line between governmental and private, this Court applies what is known as the state-action doctrine. Under that doctrine, as relevant here, a private entity may be considered a state actor when it exercises a function "traditionally exclusively reserved to the State."

Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 804 (2019) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974)).

The media defendants are all private companies.  Mr. Pellegrino asserts no facts that demonstrate that any of the conduct of which he complains is "traditionally exclusively reserved to the State."  Manhattan Cmty. Access, 587 U.S. at 804.  Accordingly, the district judge should dismiss Mr. Pellegrino's First Amendment claims against the media defendants.

G.  Defamation Claims

Mr. Pellegrino asserts state law defamation claims against the defendants.  To invoke the subject matter jurisdiction of this court, a claim must arise (1) under federal law, see 28 U.S.C. § 1331; or (2) be between completely diverse parties and assert an amount-in-controversy over $75,000, see id. at § 1332.  Mr. Pellegrino's complaint fails to invoke the subject matter jurisdiction of this court as his defamation claim arises under state tort law and does not raise a federal question. Also, Mr. Pellegrino and at least one other defendant to this action are residents of Massachusetts,[5] and the lack of complete diversity between the parties removes this court's diversity jurisdiction.

---

[5] Because Mayor Wu is employed by the City of Boston, the City of Boston Municipal Code requires that she be a resident of Boston while she holds that position.  See City of Boston Code of Ordinances, Employee Residency Requirement, c. V, § 5-5.3 (City Employee Residency Requirement).

Under 28 U.S.C. § 1367(a), the district court may exercise supplemental jurisdiction over state law claims which arise from the same nucleus of operative facts as the federal claims raised in the action.  See 28 U.S.C. § 1367(a) (allowing court to exercise supplemental jurisdiction over state law claims that are "so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy"); Lerner v. Colman, 26 F.4th 71, 76-77 (1st Cir. 2022) ("'the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims'" (citation omitted)).  As discussed above, Mr. Pellegrino failed to assert a plausible claim over which this court has original jurisdiction.  Accordingly, the district judge should decline to exercise the court's supplemental jurisdiction over Mr. Pellegrino's state law defamation claims. The district judge should dismiss Mr. Pellegrino's defamation claims without prejudice to his ability to bring those claims in a court with jurisdiction to hear them.

## II.   **Motions and Requests Not Identified as Motions**

A.   Motions and Requests to Incorporate Documents from Other Cases into this Case (Doc. Nos. 1, 6-5 at 16, 76, 77)

In his Complaint and in motions/requests, Mr. Pellegrino, who describes this case as "a continuation and extension of" the Housing Case and the BDC Case, asks to incorporate, by reference, the "more than 120 pleadings and motions" he filed in those cases.  In the instant case, however, Mr. Pellegrino asserts specific claims against specific defendants who, other than Judge Sullivan, are not parties to either of those cases.

The Court is not required to comb through numerous documents in other cases to determine what facts, if any, Mr. Pellegrino asserted in his numerous filings in the Housing Case and the BDC Case might be relevant to the claims asserted here.  Cf. Douglas v. Hirshon, 63 F.4th 49, 58

(1st Cir. 2023) (citing Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1159-60 (9th Cir. 2012) (holding that a district court's decision whether "to incorporate by reference documents into [a] complaint shall be reviewed for an abuse of discretion" and stating: "Our relevant case law has recognized consistently that [a] district court may, but is not required to incorporate documents by reference.")), cert. denied, 144 S. Ct. 621 (2024) (Mem.); see also Crooker v. Mulligan, 788 F.2d 809, 811 n.3 (1st Cir. 1986) (because plaintiff "chose to present his grievances seriatim, spreading them out in separate actions, it was not unreasonable for the district court to deal with them one at a time. Especially in the case of a prolific litigant, . . . it cannot reasonably be expected that each complaint somehow incorporates by reference all the other complaints."); Thao v. LH Hous., LLC, No. 2:21-CV-00240-JDL, 2022 WL 3227130, at *3 (D. Me. Aug. 10, 2022) ("allegations in pleadings in another action, even if between the same parties, cannot be incorporated by reference") (quoting Mass. Mut. Life Ins. Co. v. Residential Funding Co., 843 F. Supp. 2d 191, 214 n.15 (D. Mass. 2012) and 5A Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, Federal Practice & Procedure § 1326 (4th ed. 2022)).  Accordingly, the district judge should deny Mr. Pellegrino's motions (Doc. No. 6-5 at 16, 76, 77) and request (Doc. No. 1, p. 8) to incorporate by reference documents filed in other cases.

  B.    Request to Exclude Media Coverage from Court Proceedings (Doc. No. 6-5 at 16)

  Mr. Pellegrino asks the court to bar any media coverage of this case, media presence in the courtroom, the courthouse, and other areas, and to bar any member of the media from contacting or reporting about him.  Mr. Pellegrino asserts, as a basis for his request, that this case presents "intensively sensitive personal, legal, and reputational issues," that he is already facing "extensive public and media scrutiny," and that allowing media coverage of and access to this case will "[c]ompromise [his] right to a fair trial," "violat[e] judicial integrity," "[e]ndanger[] the safety of

the parties and witnesses," and "amplify[] harassment, trauma, and reputational damage." Doc. No. 6-5 at 16, p. 17.

To the extent Mr. Pellegrino seeks to bar photographing, recording, and broadcasting of court proceedings in this case, such action is generally barred by this court's local rules. See L.R. 83.3. No member of the media has sought any exception to that rule in this matter, and no in-court proceedings are scheduled at this time. Therefore, Mr. Pellegrino's request concerning photographing, recording, and broadcasting of court proceedings is premature.

As to Mr. Pellegrino's request to entirely deny the press and media access to this case and the documents filed therein,

> [t]he courts of appeals have recognized a qualified First Amendment right of public access to certain documents filed in civil litigation. Courthouse News Serv. v. Quinlan, 32 F.4th 15, 20 n.8 (1st Cir. 2022) (collecting cases). So, too, the Supreme Court has recognized "a common-law right of access to judicial records," with the caveat that such a right "is not absolute." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597-98 (1978).

Doe v. Mass. Inst. of Tech., 46 F.4th 61, 67 (1st Cir. 2022) (string cite and certain internal citations omitted). "Public monitoring of the judicial system through public access to judicial records fosters the important values of quality, honesty and respect for our legal system." Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll. (Harvard Corp.), Civ. Action No. 14-cv-14176-ADB, 2023 WL 3126414, at *4 (D. Mass. Apr. 27, 2023) (internal quotation marks, alterations, and citations omitted); see also Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 412-13 (1st Cir. 1987) (the presumptive right of public access to judicial proceedings attaches to "documents which properly come before the court in the course of an adjudicatory proceeding."). When considering a request to deny public access to documents filed in a case, "a court must carefully balance the competing interests that are at stake in the particular case." Id. (internal quotation marks and citations omitted).

Here, Mr. Pellegrino fails to demonstrate that his interest in denying press and media access to this case outweighs the public's interest in such access.  Mr. Pellegrino states that he was already subject to "false public associations, doxxing, harassment, and reputational harm."  Doc. No. 6-5 at 16, p. 17.  Other than those general assertions, Mr. Pellegrino failed to identify specific press or media entities that have harmed him, the relevant conduct of each such entity, or to describe the specific "false public associations, doxxing, harassment, and reputational harm" referenced in his motion.  Id.

Mr. Pellegrino's generalized allegations are insufficient to overcome the public's First Amendment right to access judicial records, or to courtroom proceedings, should any occur.  Mr. Pellegrino failed to assert facts to warrant the exclusion of press and media organizations from accessing or reporting on documents filed in this case, or to courtroom proceedings, should any occur.  Accordingly, the district judge should deny Mr. Pellegrino's request to deny access to the press and media in this case (Doc. No. 6-5 at 16), without prejudice to his ability to file a motion asking the court to impound a particular document, or to seal a particular court proceeding in the future, if such action is warranted.

C.    Motion to Reopen Case Pursuant to FRCP 60(b) and 15(a) (Doc. No. 17)

Mr. Pellegrino filed a motion to reopen this case, stating that he previously filed a formal notice of withdrawal without prejudice in this matter.  In Mr. Pellegrino's initial Complaint in this matter, he stated: "I, Nicholas Pellegrino, acting as a pro se litigant and private citizen, hereby issue this formal Reservation of Rights in connection with the withdrawal of my filings in this matter. . . ."  Doc. No. 1, p. 5.  Mr. Pellegrino, however, has not filed a motion to withdraw this case, or any claims in this case.  Accordingly, this case has remained open since it was initially filed, and the district judge should deny the motion to reopen (Doc. No. 17) as moot.

D.    Mr. Pellegrino's Requests and Motions Seeking Full Civil and Criminal Immunity for Himself (Doc. Nos. 32 at 3, 58, 85 at 4, 97)

Mr. Pellegrino filed motions/requests for the court to grant him civil and criminal immunity.  Specifically, he asks the court to "issue a protective declaration and/or judicial order affirming Plaintiff's right to full immunity from any form of civil, criminal, administrative, or retaliatory action" related to this case.  Doc. No. 32 at 3, p.5.  Mr. Pellegrino has not provided the court with any theory of immunity which would entitle him to the relief he seeks.  Further, while the court may recognize legally cognizable immunities for civil or criminal defendants in a matter before it, the court does not grant blanket civil and criminal immunity to individuals to protect them from the possibility of ever being sued or criminally charged based on their conduct connected to a lawsuit.  Accordingly, the district judge should deny Mr. Pellegrino's motions/requests (Doc. Nos. 32 at 3, 58, 85 at 4, 97) seeking criminal and civil immunity for himself.

E.    Requests for Injunctive Relief (Doc. Nos. 6-5 at 10, 8, 28, 40, 41, 53 at 9, 57, 58 at 5, 79 at 1)

In motions/requests docketed as Document Nos. 6-5 at 10, 8, 28, 40, 41, 53 at 9, 57, 58 at 5, 79 at 1, Mr. Pellegrino asks the court to grant him injunctive relief by, among other things, ordering the defendants not to continue to engage in conduct which he alleges has harmed him, and to enjoin the defendants from manipulating the media to impact public opinion which, he asserts, would obstruct and violate his rights in the absence of court action.  In considering whether to issue preliminary injunctive relief, the court weighs four factors:

"(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing the injunction will burden the defendants less than denying an injunction would burden the plaintiffs and (4) the effect, if any, on the public interest."  But the first factor --

17

likelihood of success on the merits -- is the "linchpin" of the analysis in the First Amendment context."

Cent. Me. Power Co. v. Me. Comm'n on Govt'l Ethics & Election Pracs., No. 24-1265, 2025 WL 1911788, at *5 (1st Cir. July 11, 2025) (citations omitted).

In this Report and Recommendation, the court finds that Mr. Pellegrino failed to state any claim upon which relief could be granted in this matter. Necessarily, therefore, the court finds that Mr. Pellegrino failed to demonstrate that he is likely to succeed on the merits of any claim asserted in the Complaint documents. Accordingly, the district judge should deny Mr. Pellegrino's motions/requests (Doc. Nos. 6-5 at 10, 8, 28, 40, 41, 53 at 9, 57, 58 at 5, 79 at 1) seeking temporary restraining orders and/or preliminary injunctive relief.

F. Motions to Enforce Previous Court Orders (Doc. Nos. 6-5 at 10, 53 at 1, 58 at 5, 82, 96)

Mr. Pellegrino filed motions/requests asking the court to acknowledge and enforce previous orders it issued, including motions for injunctive relief. This court has not issued any of the orders Mr. Pellegrino now asks the court to acknowledge and/or enforce. The only orders the court issued in this case before Mr. Pellegrino filed his motions for acknowledgement and enforcement concerned recusal of the judges sitting in the District of Massachusetts, and the designation of a federal district judge sitting outside of this district to hear this matter. Those orders appear in the docket, and have been executed, and need no further acknowledgement or enforcement. It appears Mr. Pellegrino considers certain documents he filed in this case to be orders, or to have the effect of orders.

To the extent Mr. Pellegrino seeks enforcement of his own requests as though they were orders, his assumption of the effect of his filings is incorrect.  Mr. Pellegrino cannot, by filing a document, effect an order in this case.

To the extent Mr. Pellegrino asks the court to acknowledge any of his prior filings in this case, all of Mr. Pellegrino's filings received by the court appear in the docket of this case.  Accordingly, no further acknowledgement of those filings is necessary.  For all of these reasons, the district judge should deny Mr. Pellegrino's motions/requests docketed as Document Nos. 6-5 at 10, 53 at 1, 58 at 5, 82, 96).

G.    Motions and Requests to Reassert Claims Dismissed in the BDC Case (Doc. Nos. 56 at 1, 58 at 4, 59 at 1, 65 at 1)

As noted above, Mr. Pellegrino filed the BDC Case in April 2025 before filing this case on June 12, 2025.  On July 7, 2025, Judge Joun issued an Order (ECF No. 114) dismissing the BDC Case (without prejudice) because Mr. Pellegrino failed to comply with a June 2, 2025 Order in that case directing him to pay the filing fee or file a new motion for in forma pauperis status, and file an amended complaint, by June 27, 2025.  The July 7, 2025 Order dismissed the BDC Case.

In the instant motions to reassert BDC Case claims, Mr. Pellegrino asks this court to: (1) immediately preserve all of the claims and relief Mr. Pellegrino raised in the BDC Case, and (2) recognize "the present docket . . . as the appropriate venue for adjudicating all claims arising from that controversy, free of conflict and with independent oversight." Doc. No. 56 at 1; see, e.g., Doc. No. 59 at 1, p.1-2, 5 (seeking similar and additional relief).  In support of his motions/requests here, Mr. Pellegrino states that Judge Joun improperly dismissed the BDC Case and that the dismissal of that case conflicted with the governing law.

19

A litigant who is unhappy with the dismissal of a civil case in this court, who, like Mr. Pellegrino, believes that the court's order dismissing the case was not in accord with governing law, the appropriate course of action for that litigant is either filing an appropriate post-judgment motion for relief, or an appeal.  The arguments Mr. Pellegrino presses in these motions/requests are issues that can be raised in a post-judgment proceeding or appeal.

Additionally, while the BDC Case was dismissed without prejudice, the court notes that, in the July 7, 2025 Order, Judge Joun entered a filing restriction which prevents Mr. Pellegrino from filing a new lawsuit in this court without first obtaining leave of court pursuant to a procedure set forth in that Order.  Mr. Pellegrino cannot avoid complying with the terms of that Order by reasserting here the claims Judge Joun dismissed in the BDC Case.  Accordingly, and for the other reasons stated herein, the district judge should deny Mr. Pellegrino's motions/requests (Doc. Nos. 56 at 1, 58 at 4, 59 at 1, 65 at 1) to reassert here the claims dismissed in the BDC Case.

      H.     <u>Motions and Requests Concerning the Principle of "Silence as Acceptance"</u><br><u>(Doc. Nos. 55, 56 at 4, 59 at 1, 61 at 1, 61 at 3, 62, 63 at 1, 65 at 1, 65 at 3, 69 at</u><br><u>1, 70 at 3, 75, 76, 77, 79 at 1, 88, 96)</u>

Mr. Pellegrino filed motions and requests asking the court to find that in this case, the silence or inaction of any party, under various circumstances which Mr. Pellegrino sets forth in his motions/requests would automatically constitute an admission, accession, acquiescence, and/or abandonment of a claim or defense, under the "plaintiff-established doctrine," of "silence as acceptance."  <u>Doc. No. 88, p. 1</u>.  While there are circumstances when a party's silence might amount to an admission, or an abandonment of a claim or defense, none of those circumstances are present here, as no party has yet been required to respond to any filing in this case.

Mr. Pellegrino also seeks a ruling that any "silence" or delay by the court in acknowledging, ruling on, or otherwise addressing one of Mr. Pellegrino's filings, automatically

grants and/or acknowledges the validity and truth of whatever was in the relevant motion or filing in question. Motions and assertions made in other filings are not to be considered granted or affirmed because the court has yet to rule on, acknowledge, or comment on them. The court's decisions are made by court order, not "silence."

Similarly, Mr. Pellegrino seeks a ruling that the court's time-stamp on one of his filings immediately and automatically creates a de facto court order. The court's time-stamp's only function is to memorialize the date and time the court receives a manually-filed document.

Moreover, the court does not issue "advisory" opinions or judgments as to the meaning of the acts or omissions of any party in this case when there is no such situation presently before it. The court will consider matters which arise when, and if, they come before the court, and in doing so, will apply the appropriate legal standards and rules. Accordingly, the district judge should deny Mr. Pellegrino's requests concerning "silence as acceptance" or "silence is acceptance," and his requests concerning time-stamps on his filings, described above, as set forth in motions/requests docketed as Document Nos. 55, 56 at 4, 59 at 1, 61 at 1, 61 at 3, 62, 63 at 1, 65 at 1, 65 at 3, 69 at 1, 70 at 3, 75, 76, 77, 79 at 1, 88, and 96.

## CONCLUSION

For the foregoing reasons, the District Judge should dismiss the Complaint (Doc. Nos. 1, 6 at 1, 6-5 at 6, 7, 16, 21, 24 at 1, 31, 33 at 5, 39, 40, 41, 42, 43, 47, 48, 53 at 5, 55, 58 at 1, 61 at 3, 62, 65 at 1, 69 at 1, 70 at 3, 72 at 13, 74 at 1, 75, 76, 77, 79 at 1, 79 at 4, 83, 97)) in its entirety, with prejudice, except for Mr. Pellegrino's defamation claim, which the district judge should dismiss without prejudice. Further, the District Judge should deny the motions and requests docketed as Document Nos. 6-5 at 10, 6-5 at 16, 8, 17, 32 at 3, 40, 41, 53 at 1, 55, 56 at 1, 56 at 4,

58 at 1, 58 at 4, 58 at 5, 59 at 1, 61 at 1, 61 at 3, 62, 63 at 1, 65 at 1, 65 at 3, 69 at 1, 70 at 3, 75, 76, 77, 79 at 1, 82, 85 at 4, 88, 96, and 97.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The objection period may be extended upon motion. Only those issues raised in the written objections "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'" Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016) (citations omitted).

Talesha L. Saint-Marc
United States Magistrate Judge

July 23, 2025

cc:     Nicholas Pellegrino, pro se